## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHAUNTAE OSBORNE-<br>FRANKLIN, as Personal<br>Representative of the Estate of<br>TERRANCE LAVON OSBORNE | ) <br> ) <br> ) <br> ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 5:22-cv-01053-JD |
| | ) | |
| BOARD OF COUNTY<br>COMMISSIONERS OF<br>CLEVELAND COUNTY, et al. | ) <br> ) <br> ) | |
| | ) | |
| Defendants. | ) | |

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS BY
## DEFENDANT CHRIS AMASON, IN HIS OFFICIAL CAPACITY

Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
John H. Kim, OBA No. 31613
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma  73106
Telephone: (405) 235-1611
Facsimile:  (405) 235-2904
rlafferrandre@piercecouch.com
jdark@piercecouch.com

*Attorneys for Defendants Chris Amason,
Blake Green, Brandi Garner, and James
Glasco*

March 7, 2023

Defendant Chris Amason, in his official capacity as Sheriff of Cleveland County, Oklahoma ("Amason") hereby files this Reply Brief in Support of Defendant Amason's Motion to Dismiss. Defendant Amason offers the following brief in support:

## I.      PLEADING STANDARD

In her Response, Plaintiff argues she is only required to minimally plead facts to survive a motion to dismiss. This grossly misstates the standard. Section 1983 plaintiffs must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. **Threadbare recitals of the elements** of a cause of action, **supported by mere conclusory statements are not sufficient** to state a claim for relief." *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007)) (internal quotations omitted and emphasis added).

Despite appearing to provide supporting authority, a distinction can be drawn from all the cases Plaintiff cites: the plaintiffs in the cited cases "have done more than simply allege that the individual officers' conduct conformed to official policy or practice; rather, they have identified a specific practice to which the officers' conduct allegedly conformed…." *Taylor v. RED Dev., LLC*, 11-2178-JWL, 2011 WL 3880881, at *4 (D. Kan. Aug. 31, 2011); *see also Gooding v. Ketcher*, 838 F. Supp. 2d 1231, 1241 (N.D. Okla. 2012) ("Plaintiff has done more than simply allege that Ketcher's conduct conformed to an official policy or practice."). The case Plaintiff most heavily relies on, *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826 (S.D. Tex. 2011), stated:

> Still, a plaintiff suing a municipality must provide fair notice to the defendant, and **this requires more than genetically [sic] restating the elements of municipal liability**. Allegations that provide such notice could

1

> include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy.

*Id*., at 843-44 (emphasis added). Plaintiff has offered nothing but generic, conclusory allegations.

Further, Plaintiff argues because it is rare that a plaintiff will have access to (or personal knowledge) of specific details regarding policies or procedures in bringing municipal liability claims, she should only be required to make minimal factual allegations at the motion to dismiss stage. *See* Doc. 42, p. 8. Thus, Plaintiff argues she should not be required to allege more than she has before discovery phase of litigation. *Id*. p. 9.

The Tenth Circuit has rejected this type of argument in § 1983 cases alleging claims of municipal liability:

> Furthermore, the principal reason the district court allowed Plaintiff to amend his complaint was to provide him the opportunity to plausibly plead that the Municipal Defendants had an unconstitutional policy or custom. But Plaintiff added no concrete allegations in his amended complaint suggesting an entity-wide policy or custom by any of the Municipal Defendants. **Instead, Plaintiff included several statements that he "believe[d] that discovery [would] reveal" such policies or customs**. **But in *Twombly***, the seminal case on federal pleading standards, **the Supreme Court rejected the idea that a plaintiff may proceed to discovery armed with just a belief that discovery might reveal facts to support his claims**.

*Frey v. Town of Jackson, Wyoming*, 41 F.4th 1223, 1243 (10th Cir. 2022) (emphasis added). As argued below and in Defendant Amason's Motion to Dismiss [Doc. 34], Plaintiff has failed to sufficiently plead a valid claim of municipal liability against Defendant Amason, in his official capacity.

## II.    USE OF TURN KEY

The "policy" of using Turn Key Health Clinics, LLC ("Turn Key") as a medical provider at Cleveland County Jail, alone, is not the basis for Plaintiff's municipal liability claims. Rather, Plaintiff alleges that Amason's "continued use of [Turn Key] *with full knowledge and approval of past similar violations and deficient healthcare system*…." was an unconstitutional policy. *See* Doc. 42, p. 19. It is further alleged Amason was motivated to maintain this policy with cost-cutting/profit motivation in mind. *Id*. Plaintiff argues that this in turn caused a daisy-chain of events leading to Mr. Osborne's injuries.

First, Plaintiff has entirely failed to show Amason had such "knowledge" of past similar violations and deficient healthcare system of Turn Key. Ostensibly, Plaintiff believes Amason should have known based on Plaintiff's enumeration of 39 allegations of denial of medical care against Turn Key. Of these 39 incidents, only seven occurred at the Cleveland County Jail, and only three incidents occurred within 5 years of Mr. Osborne's detention. Most of the incidents listed occurred in Arkansas jails or at facilities *other than* Cleveland County Jail. The incidents also cover factually dissimilar denials of medical care (e.g., dental needs, denial of anxiety medication, failure to treat a broken ankle, failure to provide insulin). It is on the basis of these disparate and attenuated claims that Plaintiff argues Amason *knew* Turn Key provided insufficient medical care, *knew* Turn Key would provide deficient care at Cleveland County Jail, and continued to maintain an unconstitutional policy of retaining Turn Key as a medical provider. This is insufficient.

Plaintiff's Response (and First Amended Complaint) failed to explain or address why these disparate claims of denial of medical care have anything to do with an allegation

3

that Amason maintained an unconstitutional policy *at Cleveland County Jail*. Moreover, Plaintiff does not argue Amason *failed* to consider alternative medical providers. Plaintiff does not argue a *better* alternative medical provider was available. Plaintiff does not argue *how* contracting with Turn Key was motivated by "cost-cutting." Plaintiff does not argue a *history or pattern* of deficiencies in medical care by Turn Key *at Cleveland County Jail*.

The allegations made by Plaintiff are the type of "formulaic recitation of the elements of a cause of action" that is insufficient to meet the requisite pleading standards. *See e.g.*, *Carbajal v. McCann*, 808 Fed. Appx. 620, 638 (10th Cir. 2020) ("Indeed, [a]side from conclusory statements, no allegations in the complaint give rise to an inference that the municipality itself established a deliberate policy or custom that caused [Plaintiffs'] injuries. Consequently, the complaint stops short of the line between possibility and plausibility of entitlement to relief.") (internal citations omitted); *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) ("A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. ) (internal quotes and citations omitted).

In *Carbajal*, the Tenth Circuit found, "The complaint makes a variety of conclusory allegations such as those that Denver had a…'policy, custom and/or practice of covering up official misconduct to avoid civil liability, which[ ] has fostered a culture of misconduct and an environment where such illegal and unconstitutional behavior is approved and condoned.'" *Carbajal*, 808 Fed. Appx. at 638.

4

The allegations that Amason maintained an unconstitutional policy of retaining Turn Key, knowing it would lead to injury, are the same type of conclusory and threadbare allegations the Tenth Circuit deems to be insufficient. Why would/should Amason know about incidents at other facilities, such as those in Arkansas? Why is an alleged denial of an inmate's dental needs in an Arkansas jail a basis for Plaintiff's claims against Amason, as Sheriff of Cleveland County, arising out of alleged congestive heart failure issues? Plaintiff did not say in her allegations, and failed to explain in her Response. Merely making these allegations, then suggesting it evidences an unconstitutional policy that led to a harm, is conclusory and fails to state a claim.

Plaintiff also failed to respond to Amason's argument regarding the absence of a causal connection between the policy of retaining Turn Key and the constitutional harm.[1]

---

[1] In her Response [Doc. 42] to Amason's Motion to Dismiss [Doc. 34], Plaintiff attempts to incorporate by reference her argument of a causal connection by incorporating arguments made in her Response [Doc. 41] to Turn Key's Motion to Dismiss [Doc. 36]:

"As to…causation…Plaintiff has sufficiently pled…as set out in her Response to Defendant Turn Key's Motion to Dismiss [Doc. 41]. Plaintiff incorporates that discussion and argument here in the interest of brevity and judicial economy." *See* Doc. 42, p. 19.

The Federal Rules of Civil Procedure allow a party to incorporate "a statement in a pleading" referenced elsewhere in any other pleading. Fed. R. Civ. P. 10(c). However, "the references to prior allegations **must be direct and explicit**" and "**prior statements in a pleading are not considered adopted unless there is an express reference to them**." Charles Alan Wright & Arthur R. Miller, 5A Fed. Prac. & Proc. Civ. § 1326 (4th ed.).

Here, Plaintiff did not identify any specific statement she wished to incorporate, instead using a shotgun approach. It is not this Defendant's responsibility to comb Plaintiff's Response to another party's Motion to Dismiss to identify the arguments Plaintiff seeks to incorporate to support her theories. The Court should not consider Plaintiff's causation arguments. Notwithstanding, out of an abundance of caution, Defendant Amason will present a reply as to what is believed to be incorporated by reference.

"The Supreme Court and the Tenth Circuit require more than a simple statement of fault to prove causation." *Goss v. Bd. of Cnty. Comm'rs of Creek Cnty.*, No. 13-CV-0374-CVE-TLW, 2014 WL 4983856, at \*20 (N.D. Okla. Oct. 6, 2014) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391–92 (1989): "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983. In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident.").

Again, it appears Plaintiff's argument is this: Amason *knew* Turn Key provided insufficient medical care, *knew* Turn Key would provide deficient care at Cleveland County Jail, and continued to maintain an unconstitutional policy of retaining Turn Key as a medical provider knowing someday harm would befall a detainee like Mr. Osborne.

This theory requires numerous assumptions: (1) Amason *knew* of all the allegations of denials of medical care against Turn Key at jails other than at Cleveland County, dating as far back as 2009; (2) Amason *knew* that Turn Key would hire medical personnel that would be deliberately indifferent to inmates' medical needs; (3) Amason *knew* Turn Key would staff those deliberately indifferent personnel at Cleveland County Jail in 2020; (4) Despite knowledge of the foregoing, Amason nefariously continued to use Turn Key in order to prioritize "cost-savings" over the well-being of detainees; (5) Amason *knew* he could realize these "cost-savings" through provisions in the Turn Key contract; (6) Knowing all this, Amason *knew* Defendants Cooper, Pata, Bruce McGuire, Sagan, Nunez, Wilson, Musgrove Chance, Jankiewicz, and Morris would be deliberately indifferent to

6

Mr. Osborne's medical needs in October 2020; (7) Then, deliberately ignored all risk of harm.

Plaintiff's own allegations state Mr. Osborne received medical attention. *See e.g.*, Doc. 25, Amended Complaint, ¶¶ 33-36, 39, 49, 51. By Plaintiff's own allegations, Mr. Osborne remained in medical observation, and was offered medications on a daily basis (despite his repeated refusals). *Id*., e.g., ¶¶ 65, 68, 71, 77, 80-83. Mr. Osborne was even taken to an outside provider at Norman Regional Hospital on October 26, just days after booking. *Id*., ¶¶ 49, 51.

It bears repeating that Plaintiff claims the continued use of Turn Key was driven by an "underlying cost-cutting/profit motivation." *See* Doc. 42, p. 19. This is speculative and conclusory. Tellingly, in *Cross v. Turn Key Health Clinics LLC*, 618CV00081DAKDBP, 2020 WL 1026540 (E.D. Okla. Feb. 6, 2020), a magistrate judge in the Eastern District of Oklahoma found the same allegation of "profit motivation" by Turn Key insufficient to survive a motion to dismiss. To sufficiently establish a causal link between the purported financial motives, *Cross* stated the plaintiff *must connect the alleged cost-saving policy with the specific treatment or care that he was denied*:

> Indeed, to properly allege causation Mr. Cross **must offer a direct connection between Turn Key's formal cost-saving policy and the "specific treatments or care that he was denied" as part of his claim for inadequate medical care**. Further, while "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Mr. Cross does not offer any causal link or facts in support, and it is not the obligation of the court "to piece together allegations in a complaint to establish a valid claim, even for a pro se litigant"

7

*Id.*, at \*8 (emphasis added). The "cost-saving" allegation also failed to survive dismissal in *Prince v. Turn Key Health Clinics, LLC*, 18-CV-0282-CVE-JFJ, 2019 WL 238153 (N.D. Okla. Jan. 16, 2019). The *Prince* Court, and as argued by Amason, found the cost-saving allegation to be speculative and conclusory:

> Even assuming, for the purposes of analysis, that the alleged failure to order a drug screen is one of many alleged acts or omissions that, combined, amount to a denial of medical care, plaintiff fails to allege any other specific acts or omissions that were directly caused by Turn Key's cost-saving practice. Similarly, **the Court finds that plaintiff's allegation that the cost-saving practices "exposed plaintiff to a substantial risk of serious harm by failing to take reasonable steps to determine the nature of plaintiff's worsening medical condition" is generalized and speculative**. To sufficiently allege causation for the purposes of municipal liability, plaintiff must allege the specific treatments or care that he was denied as a result of the cost-saving practices. Moreover, **to move beyond the realm of speculation, plaintiff must allege his basis for asserting that the denial of those treatments or care was a result of the cost-saving practices**.

*Id.*, at \*5 (emphasis added). Plaintiff has not identified any specific treatment or care that Mr. Osborne was denied based on the alleged policy of retaining Turn Key. For the foregoing reasons, Plaintiff's allegations regarding the unconstitutional policy of retaining Turn Key fails to state a claim and should be dismissed.

### III.   FAILURE TO TRAIN

Plaintiff also fails to state a claim against Amason for failure to train detention officers on sight checks. In conclusory fashion, Plaintiff claims this deficient training was "widespread amongst Cleveland County jailers." *See* Doc. 42, p. 18. At the same time, Plaintiff did not identify a single jailer who performed a deficient sight check on Mr. Osborne. Similarly, Plaintiff has failed to name a single jailer in the caption of this lawsuit, instead naming only administrative staff and nine John and Jane Does. *See* Doc. 25, p. 1.

8

Plaintiff impliedly states the sight checks are intended to trigger medical staff to attend to an inmate's medical needs. Yet, by her own allegations, Mr. Osborne was already housed in medical observation. *See e.g.*, Doc. 25, p. 16, 100, ¶¶ 73, 335. How was this purported failure to train causally related to Mr. Osborne's injuries when he was already housed in medical observation? And despite Amason arguing reliance on the single 2018 incident in *Thompson v. Norman Regional Hospital Authority*, et al., CIV-19-113 is insufficient for her failure to train claim, Plaintiff doubles-down in her Response reiterating: "Plaintiff further alleged that 'as far back as January 2018'…." *See* Doc. 42, p. 20. Plaintiff offers no other incidents to evince a pattern of deficient sight checks to show deliberate indifference on the part of Amason. Even then, Plaintiff did not even minimally allege that the deficiencies in sight check training continued from 2018 to the time of Mr. Osborne's detention. It should further be noted that *there was no finding by a Court or jury or otherwise that the 2018 Thompson-related sight checks were even deficient.*

The Supreme Court stated it is "difficult in one sense even to accept the submission that someone pursues a 'policy' of 'inadequate training,' unless evidence be adduced which proves that the inadequacies resulted from **conscious choice** – that is, proof that the policymakers **deliberately** chose a training program which would prove inadequate." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (emphasis added). Otherwise, such claims would transform §1983 into a vicarious-liability statute. Based on this requisite showing of a conscious choice or "deliberate indifference," a plaintiff must, at a minimum, demonstrate the municipality was deliberately indifferent to a *known* risk of harm. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). The indifference must be based on a

9

"pattern of **similar constitutional violations** by untrained employees…to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (emphasis added); see also *Simpson v. Little*, 500 F. Supp. 3d 1255, 1268 (N.D. Okla. 2020); *Bryson v. City of Oklahoma City*, 627 F.3d 784, 789-90 (10th Cir. 2010).  "This standard usually requires proof that a municipality's employees engaged in a 'pattern of similar constitutional violations' **separate from the conduct that harmed the plaintiff**." *Gambrel v. Knox Cty., Kentucky*, 25 F.4th 391, 408 (6th Cir. 2022) (citing *Connick*, 563 U.S. at 62) (emphasis added).

Plaintiff simply has not shown a pattern of similar constitutional violations as those alleged by Plaintiff. Beyond Mr. Osborne's alleged harms, Plaintiff has only offered one other case in which deliberate indifference was alleged - the dissimilar instance in 2018 involving an inmate who died of drug toxicity just hours after he entered the facility.

Without identification of a pattern of similar misconduct by other officers at Cleveland County Jail, Plaintiffs must rely on the "rare 'single-incident' theory of municipal liability to assert a valid failure to train claim. However, such a claim can only exist when "the officer who acted unconstitutionally did so 'pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued.'" *Sandberg v. Englewood, Colorado*, 727 F. App'x. 950, 964 (10th Cir. 2018) (unpublished) (citing *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) and *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)). No such allegations are made here.

## IV.    FAILURE TO SUPERVISE

A claim based on a failure to train or supervise can only exist "only where the failure to train amounts to **deliberate indifference** to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (emphasis added). "This standard is difficult to satisfy and generally requires a pattern of tortious conduct." *Parker v. City of Tulsa*, 745 Fed. Appx. 79, 82 (10th Cir. 2018). "'The deliberate indifference standard may be satisfied when the municipality has *actual or constructive notice* that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.'" *Folts v. Grady Cnty. Bd. of Cnty. Commissioners*, CIV-15-996-SLP, 2019 WL 10250958, at *5 (W.D. Okla. Sept. 25, 2019) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir.1998)).

Plaintiff must establish that Amason was deliberately indifferent to a need of supervision of Turn Key personnel. "It is not enough to establish that the official should have known of the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir.1998). Plaintiff has not alleged or argued Amason knew that Defendants Cooper, Pata, Bruce McGuire, Sagan, Nunez, Wilson, Musgrove Chance, Jankiewicz, and Morris needed supervision based on previous failures. Plaintiff has not shown a pattern of tortious conduct at Cleveland County Jail that would have put Amason on notice, constructive or otherwise, of a need to supervise any Turn Key employees. Rather, Plaintiff argues the need to supervise existed based on allegations of denial of medical care against other unknown/unnamed/different Turn Key employees at other jail facilities. "Deliberate

11

indifference is shown when 'the need for more or better supervision to protect against constitutional violations was obvious.'" *Buari v. City of New York*, 530 F. Supp. 3d 356, 400 (S.D.N.Y. 2021) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)).

Repeatedly, Plaintiff refers to the single 2018 incident in *Thompson v. Norman Regional Hospital Authority*, et al., CIV-19-113 as a basis for her claims. Plaintiff has offered <u>no other incidents</u> to show a basis for a failure to supervise claim. An isolated incident, even two, is insufficient without more to allege an unconstitutional policy or custom. *See e.g.*, *Meadows v. Whetsel*, No. CIV-14-1030-HE, 2015 WL 7016496, at *6 (W.D. Okla. Nov. 10, 2015) (In granting defendant's 12(b)(6) motion, this Court opined, "Two isolated, unrelated incidents, even if relatively recent, without more, are not enough to allege an unconstitutional custom or County policy."). Further, there has been no finding that any Turn Key or County employee was deliberately indifferent in that case.

Plaintiff's claims further fail as, by way of *ipse dixit*, Plaintiff says that Turn Key LPNs were under-trained and under-qualified without more. In her Response, Plaintiff continues to make generalized, conclusory argument that are insufficient to state a claim for relief:

- "[Amason] was aware of Turn Key's over-reliance on undertrained and underqualified LPNs to be the majority of day-to-day medical staff…." *See* Doc. 42, p. 27;

- "[Amason] was further aware that Turn Key does nothing to evaluate the skills of new-hire LPNs…." *Id*.

- "And yet, with full knowledge that many times the lives of inmates are placed solely in the hands of these low-level, undertrained LPNs, and the knowledge

of how…one death had recently been caused by Turn Key's over-reliance on undertrained, underqualified, largely unsupervised LPNs, Amason did nothing to ensure that people placed in the position of making…medical decisions were assessed for the proper skills…." *Id*., p. 28.

Who was under-trained? Who was under-qualified? How was Amason aware of undertrained or underqualified LPNs? The allegations made by Plaintiff are simply too general, vague, and conclusory to state a claim to relief that is plausible on its face, thus warranting dismissal.

## V.     UNDERLYING CONSTITUTIONAL VIOLATION

Plaintiff has failed to plead sufficient facts to show that any detention staff or Turn Key medical personnel was aware of and deliberately disregarded Mr. Osborne's medical condition. By Plaintiff's own allegations, Mr. Osborne had congestive heart failure and bilateral peripheral edema, and to manage these conditions, Mr. Osborne required medications and treatment. *See* Doc. 25, p. 7-8, ¶¶ 28-29. On October 23, 2020, Turn Key personnel verified Mr. Osborne's medications with Walgreen's pharmacy, and began administering medication the following day (*Id*., ¶¶ 36, 39). On October 26, days after booking, Mr. Osborne was taken to Norman Regional Hospital and cleared to return to the jail (*Id*., ¶¶ 49, 51). Turn Key staff repeatedly saw Mr. Osborne, attempting to administer medication. Mr. Osborne either took them (*Id*., e.g., ¶¶ 65, 68, 71, 77, 80-83) or refused them.

To prevail on her claim against Defendant Amason, Plaintiff must first show that a county employee was deliberately indifferent; Plaintiff must show that a county employee knew of and disregarded a substantial risk of harm to Plaintiff by deliberately failing to

take any action. *See e.g.*, *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) ("The subjective component [of deliberate indifference] is satisfied if the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference.'"). Further, "the subjective component requires the prison official to disregard the risk of harm claimed by the prisoner." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009). In other words, the subjective component requires a connection between the subjective disregard of a risk of serious harm and the objective harm actually claimed (i.e., congestive heart failure and bilateral edema).

Plaintiff has failed to allege an underlying constitutional violation by a county employee. As by her own allegations, detention staff were aware Mr. Osborne was housed in the medical unit, under the continuous care of the medical provider, and being seen regularly by medical staff. Turn Key employees administered medications and were checking on him regularly. Mr. Osborne was taken to Norman Regional for outside medical treatment, and was cleared to return to jail. Moreover, Plaintiff has failed to provide any factual allegations suggesting the conditions observed by a county employee in Mr. Osborne were related to (or caused by) his congestive heart failure and bilateral peripheral edema.

Thus, Plaintiff has failed to allege sufficient facts to demonstrate any county employee committed an underlying constitutional violation that could impute municipal liability on to Sheriff Amason, in his official capacity.

14

## <u>CONCLUSION</u>

WHEREFORE, Defendant Chris Amason, in his official capacity as Sheriff of Cleveland County, Oklahoma, respectfully requests this Court dismiss Plaintiff's claims against him pursuant to Fed. R. Civ. P. 12(b)(6) as Plaintiff has failed to state a claim upon which relief may be granted.

Respectfully submitted,

 s/ Jessica L. Dark
Robert S. Lafferrandre, OBA No. 11897
Jessica L. Dark, OBA No. 31236
PIERCE COUCH HENDRICKSON
 BAYSINGER & GREEN, L.L.P.
1109 North Francis Avenue
Oklahoma City, Oklahoma  73106
Telephone:  (405) 235-1611
Facsimile:   (405) 235-2904
rlafferrandre@piercecouch.com
jdark@piercecouch.com
*Attorneys for Defendants Chris Amason,*
*Blake Green, Brandi Garner, and James*
*Glasco*

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to all counsel who have entered their appearance in this case.

s/ Jessica L. Dark
Jessica L. Dark